J-A04014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORNELL J. SUTTON | : | No. 1419 EDA 2018 |

Appeal from the Order April 19, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004873-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 29, 2019**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Philadelphia County on April 19, 2018, suppressing statements made by Cornell J. Sutton during a custodial interrogation.[1]  The Commonwealth argues Sutton knowingly and intelligently waived his **Miranda**[2] rights before being questioned by Detective Don Suchinsky.  After careful review, we reverse and remand.

_____

[1] The Commonwealth has certified in its notice of appeal that the suppression order "terminates or substantially handicaps the prosecution." Commonwealth Notice of Appeal, 5/16/18, at 1; *see* Pa.R.A.P. 311(d).

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

 *Retired Senior Judge assigned to the Superior Court.

On April 15, 2017, Sutton was arrested in relation to an April 6, 2017 murder. He was charged with murder,[3] violations of the Uniform Firearms Act,[4] possession of an instrument of crime,[5] robbery,[6] and theft.[7] On March 21, 2018, Sutton filed a pretrial motion challenging the admissibility of a statement he made during an interrogation. Sutton argued that the statement "was not given knowingly, intelligently or voluntarily, and was taken in violation of his Constitutional rights and protections." Sutton Motion in Limine, 3/21/18, at 2.

On April 17, 2018, the trial court held a suppression hearing. The suppression court summarized the relevant facts of the underlying case as follows:

> Detective [Suchinsky] stated that at four minutes and two seconds into the video, [Sutton] is shown seated in the interview room of the Homicide Unit. At one hour, six minutes and forty-one seconds into the video, Detective [Suchinsky] entered the room. At one hour, eight minutes and forty-nine seconds into the video. Detective [Suchinsky] read **Miranda** warnings to [Sutton]. Thereafter, [Sutton] was escorted to the restroom.
>
> At one hour, fifty-five minutes and six seconds into the video, [Sutton] is shown giving his biographical information. At two hours and fourteen minutes and thirty-nine seconds into the

---

[3] 18 Pa.C.S.A. § 2502.

[4] 18 Pa.C.S.A. §§ 6106, 6108.

[5] 18 Pa.C.S.A. § 907.

[6] 18 Pa.C.S.A. § 3701.

[7] 18 Pa.C.S.A. § 3921.

video, Detectives [Suchinsky] and Sloan resumed the interrogation and [Sutton] gave a statement. **Miranda** warnings were not repeated. At three hours[,] two minutes and 15 seconds into the video, [Sutton] was presented with a typed version of his statement, which he read and signed.

This court carefully studied those portions of the video presented by the prosecutor. This court finds that at no time did either Detective [Suchinsky] or Detective Sloan ask [Sutton] if he understood the warnings and if he was willing to waive his rights. This court observed that at no time did [Sutton] manifest that he understood the warnings and that he was willing to waive his rights.

Trial Court Opinion, 6/11/18, at 2-3.

Sutton's interrogation was recorded and the video was entered into evidence at the suppression hearing. At the suppression hearing, Detective Suchinsky narrated what was occurring on the video. Judge Steven R. Geroff granted Sutton's suppression motion on April 19, 2017. The trial court found Sutton "neither said anything nor gestured in any way indicating that he understood his **Miranda** rights and that he was willing to waive them." Trial Court Opinion, 6/11/18, at 4. The Commonwealth appealed.

Our scope of review of a suppression hearing is limited to the evidentiary record created at the suppression hearing. **Commonwealth v. Neal**, 151 A.3d 1068, 1071 (Pa. Super. 2016).

[T]his Court does not, nor is it required to, defer to the suppression court's legal conclusions that a confession or **Miranda** waiver was knowing or voluntary. Instead, we examine the record to determine if it supports the suppression court's findings of fact and if those facts support the conclusion that, as a matter of law, Appellant knowingly and intelligently waived his **Miranda** rights. . . .

- 3 -

> Regardless of whether a waiver of **Miranda** is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also *knowing* and *intelligent*.
>
> **Miranda** holds that '[t]he defendant may waive effectuation' of the rights conveyed in the warnings 'provided the waiver is made voluntarily, knowingly and intelligently.' The inquiry has two distinct dimensions. First[,] the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived.

**Commonwealth v. Knox**, 50 A.3d 732, 746 (Pa. Super. 2012) (citations omitted) (emphasis in original).

We have repeatedly emphasized that the best practice is for police officers to obtain written and oral confirmation that a defendant understands his **Miranda** rights prior to interrogating him. **See, e.g.**, **Commonwealth v. Cohen**, 53 A.3d 882, 887 (Pa. Super. 2012). However, in cases where the suspect was read his **Miranda** rights, and the totality of the circumstances manifests his understanding and intent to waive those rights, we will not suppress the statements simply because the actual words were not spoken. **See id.**

There is no formal protocol that must precede a waiver. **Commonwealth v. Clemons**, 200 A.3d 441, 473 (Pa. 2019). A verbal

- 4 -

expression of waiver is not necessary. *Id.* at 472; ***Commonwealth v. Bomar***, 826 A.2d 831, 843 (Pa. 2003). So long as the ***Miranda*** rights were properly conveyed, waiver can be inferred by the defendant's conduct. ***See Clemons***, 200 A.3d at 472; ***see also Commonwealth v. Baez***, 21 A.3d 1280, 1286 (Pa. Super. 2011).

From our review of the record, it is apparent Sutton understood the rights as he was being read them. He voluntarily waived those rights when he began answering Detective Suchinsky's questions. The video shows Sutton was able to understand and follow the officers' directions when he was first brought into the interrogation room.[8] After the officers processed Sutton, he requested and was provided a cigarette. About an hour after entering the interrogation room, Sutton was read his ***Miranda*** rights by Detective Suchinsky. Sutton was making eye contact and nodding his head while the rights were being read, similar to how he nodded his head in response to questions when he was first brought into the interrogation room. Sutton then went to the bathroom and, ten minutes later, Detective Suchinsky took Sutton's basic intake information. After that, Sutton made his statement to the police.

---

[8] Sutton was directed to remove his belt and shoelaces and was given further direction regarding his shoes, pockets, and rolled pant legs. Sutton understood and followed each direction.

From the interrogation room video, it is clear that Sutton was informed of his *Miranda* rights and understood the warning. He knowingly waived those rights when he chose not to remain silent. *Clemons*, 200 A.3d at 472.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/19